1
2
3
4
5
6
7
8             UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  TODD D. BURPEE, | Case No. 1:21-cv-00297-KES-HBK |
| 12        Plaintiff, | FINDINGS AND RECOMMENDATIONS TO |
| 13    v. | GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1] |
| 14  SERGEANT HUFF, | FOURTEEN-DAY OBJECTION PERIOD |
| 15        Defendant. | (Doc. No. 36) |
| 16 | |

17        Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 36,

18 "MSJ"). For the reasons set forth below, the undersigned recommends that the district court grant

19 Defendant's MSJ on Plaintiff's Equal Protection claim.

20                    **I.  BACKGROUND**

21     **A.  Procedural History and Allegations in Operative Complaint**

22        On March 2, 2021, Plaintiff Todd Burpee initiated this action while confined at California

23 Department of Corrections and Rehabilitation ("CDCR").  (Doc. No. 1)  On July 28, 2023, the

24 undersigned recommended that this action proceed solely against Sergeant Huff and an unknown

25 correctional officer on Plaintiff's Fourteenth Amendment Equal Protection claim.  (Doc. No. 10).

26 On August 25, 2023, Plaintiff filed a notice electing to proceed solely on the claim found

27 _____

28 [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

1  cognizable.  (Doc. No. 11).   On November 14, 2023, the Court issued an order to show cause,

2  directing Plaintiff to provide additional identifying information so that the unknown correctional

3  officer could be served.  (Doc. No. 20).  On February 13, 2024, the undersigned recommended

4  that the doe defendant be dismissed pursuant to Federal Rule 4 of Civil Procedure because

5  Plaintiff failed to provide sufficient information to identify and locate the unknown correctional

6  officer for service of process.  (Doc. No. 25).  On June 17, 2024, the District Judge adopted the

7  magistrate's Findings and Recommendations in full.  (Doc. No. 35).

8         In relevant part, Plaintiff asserts, while housed at Valley State Prison ("VSP"), he ordered

9  a Rastafarian crown and medallion in late May 2020 from a CDCR approved vendor.  (Doc. No.

10  1 at 2-4).  On June 25, 2020, Plaintiff went to the Receiving and Release Department to pick up

11  the crown and medallion but the unknown correctional officer working at the Receiving and

12  Release Department would not give Plaintiff the two items because the crown had the color red

13  on it and the medallion was larger than 1.5 inches.  (*Id*. at 4).  Plaintiff disputes that the

14  Rastafarian crown and medallion violate the guidelines established by CDCR's Religious

15  Personal Property Matrix.  (*Id*.).  The unknown correctional officer spoke with Defendant Huff

16  who affirmed the unknown correctional officer's decision and refused to give Plaintiff his

17  Rastafarian crown or medallion.  (*Id*.).  Plaintiff states other "similarly situated" inmates were the

18  same two religious items that he was denied.  (*Id*. at 6).  As relief, Plaintiff seeks compensatory

19  and punitive damages.  (*Id*. at 10).

20         **B.  Operative Pleadings**

21         On June 3, 2025, Defendant filed his MSJ.  (Doc. No. 36).  Supporting his MSJ,

22  Defendant submits: (1) a memorandum of points and authorities (Doc. No. 36); (2) a statement of

23  undisputed material facts (Doc No. 36-1); (3) the declaration of Huff (Doc. No. 36-2); (4) Exhibit

24  A to Huff's declaration (Doc. No. 36-3); (5) the declaration of Castro (Doc. No. 36-4); (6) Exhibit

25  A to Castro's declaration (Doc. No. 36-5); (7) the declaration of Matsumura (Doc. No. 36-6); and

26  (8) Exhibit A to Matsumura's declaration (Doc. No. 36-7).  Defendant argues that Plaintiff cannot

27  establish the existence of a class because he is unable to identify any of the other inmates who

28  possessed the items he was denied, and is unable to establish that those inmates received the items

2

1   from Defendant Huff.  (Doc. No. 36 at 2).  Further, Defendant denied Plaintiff the possession of a

2   Rastafarian crown and medallion because the items violated CDCR's Religious Personal Property

3   Matrix and not based on any discriminatory intent.  (*Id*.).  Finally, Defendant asserts he is entitled

4   to qualified immunity as it was not clear to him at the time of the incident that the actions he took

5   would violate Plaintiff's constitutional rights.  (*Id*.)

6          On August 7, 2025, Plaintiff filed his response in opposition to Defendant's MSJ.  (Doc.

7   No. 41).  In support, Plaintiff submits: (1) a memorandum of points and authorities (*id*. at 1–4);

8   (2) and various exhibits including invoices, photos of the items ordered, and CDCR's Religious

9   Personal Property Matrix (*id*. at 6–20).  Plaintiff's response does not include a response to

10  Defendant's statement of undisputed facts.  In his opposition, Plaintiff argues that the religious

11  items were wrongfully disallowed because they were purchased from an approved CDCR vendor.

12  (*Id*. 1-2).  Further, Plaintiff points out that the Rastafarian crown and medallion should have been

13  allowed because inmates may possess multicolored items if they do not appear to be

14  predominantly one of the restricted colors (green, black, brown, tan, red, or blue), and the

15  Rastafarian crown was predominantly white.  (*Id*. at 3).

16         Defendant filed a timely reply.  (Doc. No. 42).  Defendant points out that Plaintiff

17  opposition fails to address the equal protection claim and instead focusses on whether the

18  religious items violated CDCR Religious Personal Property Matrix.  (*Id*. at 2).

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

21         The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

22  order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith

23  Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

24  when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

25  as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate

26  time for discovery and upon motion, against a party who fails to make a showing sufficient to

27  establish the existence of an element essential to that party's case, and on which that party will

28  bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

1    moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of

2    material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence

3    for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

4    affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

5    U.S. 242, 248 (1986).

6         If the moving party meets its initial burden, the burden then shifts to the opposing party

7    to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ.

8    P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that

9    there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The

10   party is required to tender evidence of specific facts in the form of affidavits, and/or admissible

11   discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P.

12   56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a

13   material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be

14   shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

15   *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

16   1987). However, "failure of proof concerning an essential element of the nonmoving party's

17   case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

18        The court must apply standards consistent with Rule 56 to determine whether the

19   moving party demonstrated there is no genuine issue of material fact and showed judgment to be

20   appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

21   "[A] court ruling on a motion for summary judgment may not engage in credibility

22   determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

23   2017) (citation omitted). The evidence must be viewed "in the light most favorable to the

24   nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving

25   party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla

26   of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly

27   supported summary judgment motion. *Anderson.*, 477 U.S. at 252. However, where "opposing

28   parties tell two different stories, one of which is blatantly contradicted by the record" courts

4

1    "should not adopt that version of the facts for purposes of ruling on a motion for summary

2    judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

3         Plaintiff's verified complaint may serve as an affidavit in opposition to summary

4    judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v.*

5    *Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory

6    allegations unsupported by specific facts, will not be sufficient to avoid summary judgment.

7    *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And,

8    where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may

9    be deemed to have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

10        The undersigned has carefully reviewed and considered all arguments, points and

11   authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

12   objections, and other papers filed by the parties.  The omission to an argument, document, paper,

13   or objection is not to be construed that the undersigned did not consider the argument, document,

14   paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

15   deemed admissible, material, and appropriate for purposes of issuing these Findings and

16   Recommendations.

17        **B. Equal Protection Clause of the Fourteenth Amendment**

18        "No State shall . . .deny to any person within its jurisdiction the equal protection of the

19   laws." U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause requires the State to treat all

20   similarly situated people equally." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114,

21   1123 (9th Cir. 2013).  There are two different ways in which a plaintiff may state an equal

22   protection claim.  A plaintiff's first option is to allege "facts plausibly showing that the

23   defendants acted with an intent or purpose to discriminate against [him] based upon membership

24   in a protected class[.]" *Id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir.

25   2005)).  The second way a plaintiff may state a claim is "as a 'class of one' by alleging that [the]

26   plaintiff has 'been intentionally treated differently from others similarly situated and that there is

27   no rational basis for the treatment[.]" *Koboyashi v. McMulling*, 2022 WL 3137958, at *23 (C.D.

28   Cal. May 31, 2022) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  The

1    Supreme Court has held that for equal protection purposes, race is a suspect distinction. *City of*
2    *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

3                              **III.  ANALYSIS**

4            **A.  Undisputed Material Facts**

5            Defendant provides a statement of undisputed material facts.  (Doc. No. 36-1).  Each
6    listed fact cites to sworn declarations, deposition testimony, and the complaint.  (*See* generally
7    *id*.).  In his Response, Plaintiff fails to include a response to Defendant's statement of undisputed
8    facts or his own statement of undisputed facts.  (*See* Doc. No. 41).

9            Where Plaintiff's Response implicitly argues that Defendant's undisputed facts are
10   inaccurate and his argument is based solely on conclusory statements or the complaint, and lacks
11   detailed facts, while Defendant provides detailed facts or documentary evidence in support, the
12   Court generally does not find Plaintiff's objections sufficient to establish a genuine dispute of
13   material fact.  *See Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc); *see also*
14   *FTC v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-
15   serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a
16   genuine issue of material fact.").  Having reviewed the record, the undersigned finds the
17   following facts to be material and undisputed, unless otherwise noted.

18       •   On June 25, 2020, Plaintiff Burpee went to the Receiving and Release ("R&R")
19           Department of Valley State Prison to pick up special purchase religious items. The
20           Correctional Sergeant assigned to the Receiving and Release Department at that time was
21           Defendant Huff.  (Doc. No. 1 at 2, 4).
22       •   The items Plaintiff had ordered and attempted to pick up included a Rastafarian Crown
23           and a rasta medallion. (Doc. No. 1 at 4).
24       •   California Department of Corrections and Rehabilitation's ("CDCR") Religious Personal
25           Property Matrix ("RPPM") states that all religious medallions may not exceed a diameter
26           of one and a half (1.5) inches. (Doc. No. 36-2 at 2 ¶4; Doc. No. 36-3 at 2-3).
27       •   The RPPM states that any Rastafarian Crowns may only be "white, gray, or multicolored
28           (no red or blue)." (Doc. No. 36-3 at 2).

                                        6

- The rasta medallion that Plaintiff had ordered was approximately two inches in diameter. (Doc. No. 36-7 at 3-18, "Burpee Depo. Tr." at 15:19-21).

- The Rastafarian Crown was predominantly white with a thin strip of red, green, and yellow. (Burpee Depo. Tr. at 15:25-16:10).

- On June 25, 2020, Plaintiff was denied the items by an unknown correctional officer due to the medallion being too large and the crown containing a restricted color (red). (Doc. No. 1 at 4).

- Plaintiff informed the officer that he had ordered the items from an approved vendor of the CDCR, and the officer then consulted with Defendant Huff. (Doc. No. 1 at 4).

- Defendant Huff stated that Plaintiff could not have the items because the crown contained red, and the medallion was bigger than 1.5 inches. (Doc. No. 1 at 4).

- Plaintiff then initiated the grievance process regarding the items, which resulted in an interview with Defendant Huff on July 14, 2020. During the interview, Defendant Huff again stated that the crown was not allowed because the RPPM specified that items could not contain the color red, and that the medallion was not allowed because it was larger than 1.5 inches. (Doc. No. 1 at 5).

- Plaintiff possesses a copy of a receipt another inmate received at the time he got his Rastafarian crown, which Plaintiff alleges is the exact same crown he was denied, from the R&R. The other inmate did not order a medallion. (Burpee Depo. Tr. at 20:5-21:3).

- This inmate received the crown from a correctional officer named Mendoza on May 13, 2018, not Defendant Huff. (Burpee Depo. Tr. at 21:6-22:8).

- Defendant Huff was not working on May 13, 2018, and did not have any control over the R&R Department on that date. (Doc. No. 36-5 at 2; Doc. No. 36-2 at 2 ¶10).

- Although Plaintiff alleges in his complaint that other inmates received the same items he was denied, Plaintiff has no evidence establishing that Defendant Huff gave those items to these inmates. Indeed, Plaintiff does not even know the names of those inmates, nor has he spoken to the other inmates about which officer may have provided the items to them, or their experience at R&R. (Doc. No. 1 at 6; Burpee Depo. Tr. at 19:16-24, 22:14-23:10).

1    • Defendant has applied the RPPM equally to every inmate, and did not treat Plaintiff any

2         differently than he treated any other inmate. (Doc. No. 36-2 at 2 ¶¶11-12).

3         **B. No Intentional Discrimination**

4         Plaintiff argues that he is entitled to the same treatment as any other incarcerated person

5    regardless of his religion. (Doc. No. 41 at 3). Specifically, he argues Defendant "Huff . . .

6    intentionally [did] not follow the RPPM." (Doc. No. 41 at 3). In support of his claim, Plaintiff

7    proffers a receipt from another inmate who received a similar Rastafarian crown from the R&R.

8    (*See* Doc. No. 41 at 15; *see also* Burpee Depo. Tr. at 20:5-21:3). This inmate received the crown

9    from a correctional officer named Mendoza on May 13, 2018. (Burpee Depo. Tr. at 21:6-22:8).

10   Defendant argues, *inter alia*, that Plaintiff failed to establish that the alleged discrimination was

11   intentional. (Doc. No. 36 at 1). The Court agrees with Defendant.

12        CDCR's RPPM states that all religious medallions may not exceed a diameter of one and

13   a half (1.5) inches and that Rastafarian Crowns may only be "white, gray, or multicolored (no red

14   or blue)." (Doc. No. 36-3 at 2-3). Plaintiff testified that the medallion he ordered was two inches

15   in diameter and Rastafarian Crown contained a thin red strip. (Burpee Depo. Tr. at 15:19-16:10).

16   According to Plaintiff, Defendant Huff stated that he could not have the items because the crown

17   contained red, and the medallion was bigger than 1.5 inches. (Doc. No. 1 at 4). The Court finds

18   that Defendant Huff's application of the RPPM apparently fell squarely within these policy

19   directives—denying the Rastafarian Crown because it contained red and denying the medallion

20   because it exceeded 1.5 inches.

21        Even if Defendant Huff somehow misapplied the RPPM, the record does not support that

22   Defendant Huff's alleged discrimination was intentional. Defendant declares that he applied the

23   RPPM equally to every inmate, and did not treat Plaintiff any differently than he treated any other

24   inmate. (Doc. No. 36-2 at 2 ¶¶11-12). Moreover, although Plaintiff alleges that other inmates

25   received the same items he was denied, Plaintiff failed to provide any evidence establishing that

26   Defendant Huff gave the items at issue to any other inmate. (Doc. No. 1 at 6; Burpee Depo. Tr. at

27   19:16-24, 22:14-23:10). Because Plaintiff fails to show that Defendant acted with any

28   discriminatory animus, he is unable to state an equal protection claim. *See Uhuru v. Bonnifield*,

1    2025 WL 1225808, at *17 (C.D. Cal. Feb. 12, 2025), *report and recommendation adopted*, 2025

2    WL 1226721 (C.D. Cal. Apr. 28, 2025); *see also Nible v. Fink*, 2019 WL 1547261, at *9 (S.D.

3    Cal. Apr. 8, 2019) ("Plaintiff cannot carry his burden at trial of proving that Defendants

4    confiscated his runes with discriminatory intent, or that similarly situated people of different

5    religions are being treated differently."), *report and recommendation adopted*, 2019 WL 2611102

6    (S.D. Cal. June 26, 2019), *aff'd*, 828 F. App'x 463 (9th Cir. 2020).  Accordingly, the undersigned

7    recommends that Defendant's MSJ be granted as to Plaintiff's Fourteenth Amendment Equal

8    Protection Clause claim.

9            **C. Qualified Immunity**

10           In the alternative, Defendant asserts that she is entitled to qualified immunity in this case

11    because no official in her position would believe that their conduct violated Plaintiff's

12    constitutional rights under the circumstances.

13           A government official is entitled to qualified immunity under Section 1983 unless (1) the

14    official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his

15    conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589

16    (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S.

17    800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that

18    the statutory or constitutional question was "beyond debate," such that every reasonable official

19    would understand that what he is doing is unlawful.  *Wesby*, 138 S. Ct. at 589; *Vos v. City of*

20    *Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).  This standard is "demanding" and protects

21    "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 138 S. Ct. at

22    589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a

23    case where an officer acting under similar circumstances as [the defendant] was held to have

24    violated the constitutional right at issue."  *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th

25    Cir. 2017)).  "Even when no case is 'directly on point,' courts may compare relevant factors to

26    determine whether every reasonable officer should have known the conduct in question was

27    unlawful."  *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v.*

28    *Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017).  The plaintiff bears the burden

1   of establishing that the right alleged was clearly established. *Moran v. Washington*, 47 F.3d 839,

2   844 (9th Cir. 1998).

3           As discussed *supra*, the Court finds the undisputed facts show that Plaintiff failed to put

4   forth sufficient evidence to establish a constitutional claim.  Thus, because the Court finds no

5   constitutional violation, the Court need not address the second prong.

6           Accordingly, it is **RECOMMENDED**:

7           1.   The District Court **GRANT** Defendant's motion for summary judgment (Doc. No.

8                36).

9           2.   Judgment be entered in Defendant's favor and the case closed.

10                              **NOTICE TO PARTIES**

11          These Findings and Recommendations will be submitted to the United States District

12   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

13   after being served with a copy of these Findings and Recommendations, a party may file written

14   objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned,

15   "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

16   **(15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party

17   wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its

18   CM/ECF document and page number, when possible, or otherwise reference the exhibit with

19   specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by

20   the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §

21   636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the

22   waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

23

24   Dated:    August 27, 2025

25                                    HELENA M. BARCH-KUCHTA
                                      UNITED STATES MAGISTRATE JUDGE
26

27

28

                                        10